IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER KRAMER,<br>Plaintiff,<br>v.<br>RUST-OLEUM CORPORATION,<br>Defendant. | :<br>:<br>: | Case No. 3:25-CV-275<br>JUDGE WALTER H. RICE |

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL (DOC. #10)

---

This case is before the Court on a Motion for Partial Dismissal filed by Defendant Rust-Oleum Corporation ("Defendant"). Doc. #10. Plaintiff Alexander Kramer ("Plaintiff") filed a response in opposition, Doc. #18, and Defendant filed a reply in support of its motion. Doc. #19. With leave of Court, Plaintiff filed a supplemental brief opposing the motion, Doc. #28, and Defendant filed a supplemental brief in favor of the motion. Doc. #29.

For the reasons contained herein, Defendant's Motion for Partial Dismissal, Doc. #10, is SUSTAINED.

## I. Procedural and Factual Background

This case comes before the Court in its infancy, before Defendant has filed an answer responding to Plaintiffs claims. However, because Defendant has filed a

motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes Plaintiff's alleged facts as true for the purpose of deciding this motion.

Plaintiff's claims arose from use of Varathane Wood Stain ("Varathane"), a product made by Defendant. In July 2024, Plaintiff used Varathane to stain wooden flooring at his house. After he finished, he disposed of the items with which he had applied the Varathane in a garbage can. Either overnight or early the following day, the Varathane-saturated application materials spontaneously combusted, causing a fire and associated damages in excess of $75,000.

Plaintiff filed this suit against Defendant alleging two causes of action: (1) defective design or formulation under Ohio Revised Code ("ORC") § 2307.75 ("Count One") and (2) inadequate warning or instruction under ORC § 2307.76 ("Count Two"). Doc. #1.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything

alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

To survive to the discovery phase, a plaintiff need only establish that the pleadings be plausible, not probable. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). "Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.*

## III. Analysis

Defendant's Motion for Partial Dismissal seeks to dismiss Plaintiff's claims "to the extent they are premised on the alleged failure to include on the label of [Varathane] an adequate warning concerning the product's purported spontaneous combustion risk." Doc. #10, PageID #31. The Court therefore interprets this as seeking dismissal of Plaintiff's inadequate warning or instruction claim brought under ORC § 2307.76, but does not interpret this motion as seeking dismissal of Plaintiff's defective design or formulation claim brought under ORC § 2307.75.

Both parties agree that Varathane is considered a "hazardous substance," governed by the Federal Hazardous Substances Act ("FHSA"). 15 U.S.C. § 1261 *et seq.* As described by the Sixth Circuit, "[t]he FHSA provides a uniform, national standard for the labeling of hazardous substances sold in interstate commerce and intended or suitable for household use." *Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124 (6th Cir. 2018). Under the FHSA, Varathane is required to contain certain labels listing "principal hazards." 15 U.S.C. § 1261(p)(1). Where those principal hazards are concerned, "[t]he FHSA preempts state claims seeking to impose labeling requirements different from those in the FHSA and regulations pursuant to it." *Rees*, 736 F. App'x at 124.

However, the preemption scheme Congress implemented in the FHSA applies only to state claims or laws which are "designed to protect against the same

risk of illness or injury" as the FHSA. 15 U.S.C. § 1261, note (b)(1)(A). If a potential risk is not considered among the principal hazards identified by the statute, claims based on a failure to adequately warn of that risk are not preempted by the FHSA.

One principal hazard for which the FHSA mandates a labeling requirement includes when that product "is flammable or combustible." 15 U.S.C. § 1261(f)(1)(A)(v). The question at the center of this motion asks whether a product's ability to spontaneously combust falls within this category, such that it would be considered a principal hazard and subject to the FHSA's labeling requirement and preemptive effect; or whether it is a separate hazard, unaffected by the FHSA's preemption clause, and potentially subject to state labeling requirements. In other words, is spontaneous combustion the "same risk of illness or injury" as flammability or combustibility?

Defendant advances a broad view of the statutory preemption scheme. As it describes it, "courts across the country have uniformly interpreted the FHSA as preempting *all* warnings-based claims seeking to impose on 'hazardous substances,' labeling requirements different from those stated in the FHSA." Doc. #10, PageID #40 (emphasis in original). The Court rejects this view as unsupported by the statutory scheme.

Less than two months ago, the United States Supreme Court considered a case in which there existed the statutory scheme that Defendant envisions. *See*

*Monsanto Co. v. Durnell*, 609 U.S. ___, 146 S.Ct. 2001 (2026). In *Monsanto*, the focus was on whether a claim could be brought against the maker of a product governed by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), under the theory that the label was inadequate. However, FIFRA's preemption clause specifies that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b) (emphasis added). The Court, analyzing the plain text, determined that all state law labeling requirements—including tort actions brought under state law—were preempted by the broad scope of the statute. *Monsanto*, 146 S.Ct. at 2010.

Comparatively, the FHSA's preemption clause is much more narrow. Congress intended to permit state law labeling requirements to coexist with FHSA-mandated labels, so long as the state obligations did not infringe upon the hazards outlined under the FHSA.

Defendant next argues that the flammability and combustibility category set forth in 15 U.S.C. §1261(f)(1)(A)(v) should be properly understood as including the risk of spontaneous combustion. In support it points to a Congressional intent to create a category of mandated labels to protect against the "occurrence of or injury from fire." Doc. #10, PageID #42 (quoting H.R. Rep. No. 94-1022, at 1031 (1976)).

Plaintiff argues that spontaneous combustion is not subsumed within the flammability and combustibility category of principal hazards and attempts to distinguish between them. The Consumer Product Safety Commission ("CPSC"), the agency responsible for implementing the FHSA and promulgating regulations, defines "flammable" substances as those having a flashpoint[1] above 20° F and below 100° F. 16 C.F.R. § 1500.3(c)(6)(ii). In comparison, a "combustible" substance is one which has a flashpoint between 100° F and 150° F. 16 C.F.R. § 1500.3(c)(6)(iii). Spontaneous combustion is a slightly different phenomenon. Substances which spontaneously combust do not require exposure to ignition sources. Rather, the chemical reactions in the product generate heat, creating a risk of ignition on its own.

Attached to his response in opposition to the motion, Plaintiff also references a July 7, 1994, meeting of the CPSC during which the agency heard testimony from the National Paint and Coatings Association and considered whether to establish labeling requirements addressing the risk of spontaneous combustion. Doc. #18-4. Evidently, however, nothing came from these discussions. Defendant posits that the notion that the agency considered the issue at all conclusively proves that it

---

[1] A product's flashpoint is the temperature at which it generates enough vapor to sustain a fire if exposed to an ignition source.

considered spontaneous combustion to be within its jurisdiction as part of the "flammable and combustible" category.

This case is the latest in a string of cases involving the spontaneous combustion of either Varathane or other FHSA-governed substances, many of which involved the same advocates representing Plaintiff and Defendant here. The first case Defendant cites to support its view is *Peterson v. Rust-Oleum Corp.*, No. 2:23-cv-512 (E.D. Pa.). In *Peterson*, the court granted partial summary judgment to Defendant based on, ostensibly, the same arguments it makes here. However, the extent of analysis offered by that court can be quoted in its entirety: "This Court finds that Plaintiff's state law-based failure-to-warn claims are preempted and barred by the Federal Hazardous Substances Act (FHSA)," followed by a citation to *Vetter v. Rust-Oleum* Corp. Doc. #10, PageID #64. Although it appears the presiding officer likely gave further reasoning for the decision during the oral hearing in which the parties argued the motion, the written decision provides no analysis which this Court can draw from.

The sole case to which *Peterson* cites is *Vetter v. Rust-Oleum Corp.*, No. 1:21-cv-17397, 2023 WL 8890241 (D.N.J. Dec. 22. 2023). In *Vetter*, the court examined a Varathane-based failure-to-warn claim arising from circumstances much like the present case. In fact, the damage arose as a result of the spontaneous combustion of Varathane-saturated applicators, left over after applying the wood stain to

flooring. There, the plaintiff claimed that the defendant improperly failed to include a warning that Varathane could spontaneously combust, and the defendant argued that the FHSA precluded plaintiff's claim. Ultimately, the court found that the FHSA's regulation of flammability and combustibility are intended to protect consumers against the risk of a fire. *Id.* at *12. Because the plaintiff's claim had arisen from fire, notwithstanding the fact that the fire was caused by spontaneous combustion, the court determined that the FHSA preempted the claim and dismissed the case.

In *Cambridge Mut.*, the court interpreted the FHSA as preempting any labeling requirement different from the FHSA-mandated principal hazard labels. *Cambridge Mut. Fire Ins. v. Rust-Oleum Corp.*, No. 22-12211, 2023 WL 7617984, *2 (D. Mass. Nov. 14, 2023). Finding that the FHSA did not require a label addressing spontaneous combustion, the claim for failure to include such a warning was determined to be preempted and dismissed.

Finally, in *Pomerleau*, the court made two separate findings. *State Farm Gen. Ins. Co. v. Sherwin-Williams Co.*, No. 2:21-cv-220, 2021 WL 4913558 (C.D. Cal. July 26, 2021) ("*Pomerleau*"). First, it agreed that spontaneous combustibility is not, itself, a category of principal hazard under the FHSA and any claim of failure to label under that theory is not viable. Second, it determined, at the summary judgment

stage, that the product in question did adequately warn against the risk of spontaneous combustion and dismissed the claim.

Returning to the present case, the cited cases have varying levels of persuasive effect. For example, the Court will not consider the factual findings made in *Pomerleau* regarding whether the Varathane product did or did not adequately provide a spontaneous combustion warning, because such facts are not included in the pleadings and not properly decided at the motion to dismiss stage. Likewise, many of the cases focused on the fact that spontaneous combustion is not listed as a principal hazard under the FHSA. However, as explained above, this Court does not interpret the FHSA as occupying the entire field of warning labels on hazardous substances. Rather, it appears that Congress intentionally drafted a statute that permitted claims to proceed where they are based on risks different from those considered by the FHSA as principal hazards.

Ultimately, the question of whether a state labeling requirement, and therefore the viability of a failure-to-warn claim under state law, is preempted comes back to the question of what Congress intended when it passed the law. Plaintiff's argument regarding the chemical differences between the flammability/combustibility of a substance and whether it is prone to spontaneous combustion, while technically sound, is immaterial. The Court does not believe Congress intended to define principal hazards on such a minute scale that the

difference between the two is appreciable. Rather, this Court believes that Congress created the category of flammability and combustibility so as to adequately protect consumers from the risk of fire. With that risk in mind, it matters not whether the fire results from external combustion or internal (spontaneous) combustion; it is a risk of fire, nonetheless.

Having determined that the Congressional intent behind defining the principal hazard category of flammability and combustibility is the risk of fire, the Court also finds that Plaintiff's proposed spontaneous combustion warning is "designed to protect against the same risk of illness or injury." 15 U.S.C. § 1261, note (b)(1)(A). Therefore, such a warning label would be preempted by the FHSA and Plaintiff may not base a state tort claim on Defendant's failure to include such a warning. Defendant's Motion for Partial Dismissal is well taken, and Plaintiff's Count 2, brought under ORC § 2307.76, is DISMISSED.

## IV. Conclusion

For the reasons contained herein, Defendant's Motion for Partial Dismissal, Doc. #10, is SUSTAINED. Count 2 of Plaintiff's Complaint, Doc. #1, is DISMISSED.

Because Defendant's Motion for Partial Dismissal has been decided by this Order, its deadline for filing an Answer to Plaintiff's Complaint is no longer tolled. *See* Fed. R. Civ. P. 12(a)(4). Therefore, Defendant has fourteen (14) days from the date of this Order to file its Answer.

Date: August 17, 2026

Walter H. Rice

WALTER H. RICE
UNITED STATES DISTRICT JUDGE